IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

RICHARD A. GOODE, SR.,

        Plaintiff,                                         OPINION AND ORDER

    v.                                                  12-cv-830-wmc

CAROLYN W. COLVIN,
       Commissioner of Social Security,

        Defendant.
_____

Plaintiff Richard A. Goode, Sr., seeks judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Goode urges the court to remand a finding that he was not disabled within the meaning of the Social Security Act because the Administrative Law Judge ("ALJ") improperly assessed his credibility. Because the ALJ relied on inconsequential facts and failed to connect the evidence to his credibility determination in a way that allows for meaningful judicial review, the court will remand the case for further proceedings.

FACTS[1]

I.   Background

On December 6, 2011, the ALJ issued a decision denying Goode's request for Disability Insurance Benefits and Supplemental Security Income. (AR 9-23.) Goode filed a timely request for review by the Appeals Council, which was denied on September 20, 2012. (AR 1-8.) On November 11, 2012, Goode filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g). (Compl. (dkt. # 1) ¶¶ 1-3.)

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. # 7.

1

Now 56 years old, Goode has claimed disability due to a back injury that causes him severe pain. (AR 194-95.) He alleges a disability beginning September 15, 2004, when he fell off a roof and injured himself while at work. (AR 195.) Goode worked for two weeks after the injury, but stopped due to his physical condition. (AR 14, 78.) Goode has not engaged in substantial gainful activity since September 18, 2004, the alleged onset date. (AR 14, 195.)

## II.   Relevant Medical Evidence

The relevant medical record demonstrates a history of back problems beginning in 2004.[2] Goode has seen several health care providers for complaints of pain following his fall. On September 18, 2004, Goode sought care at the Howard Young Medical Center, where doctors discovered he had L3, L4, and L5 transverse process fractures. (AR 538-39.) After three physical therapy sessions, Goode reported improvement in his condition. (AR 532.) While the notes reflect Goode's brief attempt to return to work, they also indicate the physical effects of his back injury made this an "unsuccessful work attempt." (AR 14.)

On November 6, 2008, Goode sought further medical care for his back injury. (AR 202.) An MRI on January 28, 2009, found "disc degenerative changes at L3-4 and L4-5" and "diffuse bulge" at L3-4 and L4-5. (AR 377.) Goode began a physical therapy regiment that included two sessions per week, use of a transcutaneous electrical nerve stimulation ("TENS") unit, manual decompressions, a home exercise program, and a clinical exercise program. (AR 338-39.) Physical therapy alleviated some of Goode's pain, but two epidural steroid injections were also required. (AR 298, 332, 385.) According to Goode's testimony,

---

[2] The court limits its focus to Goode's back injury because he did not seek review of the ALJ's determinations related to his mental health and chronic obstructive pulmonary disease. (*See* Def.'s Br. (dkt. # 12) 5; Pl.'s Reply (dkt. # 13) 4 .)

the "first three or four" injections did not improve his condition. (AR 89.) Goode, however, noted improvement after later injections, noting that doctors "seem[ed] to have hit on the right combination" in the last series.[3] (AR 89.)

Throughout his treatment, Goode informed doctors that he slept for only about an hour per night due to back pain. (AR 91, 304.) Goode also stated that walking and standing made his pain worse. (AR 299.) Although Goode continued to experience back pain, Dr. Andrew Beaumont at the Aspirus Spine and Neuroscience Institute informed him that he was not a good surgical candidate. (AR 558.) Dr. Beaumont recommended further treatment at the Marshfield Clinic--Minocqua Center, where Goode had been undergoing physical therapy for nearly a year. (AR 338, 558.)

III. Administrative Law Judge's Decision

On December 6, 2011, the ALJ issued a decision denying Goode's disability claim, purporting to apply the standard five-step sequential evaluation process mandated by the Social Security Administration. *See* 20 C.F.R. § 404.1520(a). At step 1, the ALJ determined that Goode had not engaged in substantial gainful activity since the alleged onset date of September 18, 2004. (AR 14.) At step 2, the ALJ found that Goode had the following severe impairments: "back pain status post lumbar fractures, with lumbar degenerative disc disease and obesity . . . ." (*Id.*) At step 3, the ALJ found that none of these impairments, or a combination of them, equaled the severity of the impairments listed in 20 C.F.R. Part 404. (*Id.*)

---

[3] At the hearing, Goode testified that he has received "many" injections since 2008. (AR 88.) According to Goode's testimony, the injections reduce his pain level from about a "seven or eight" to "about a two or a three" on a scale of zero to ten, with ten equating to "a toothache." (AR 89.)

3

At step 4, which is the critical step for the purposes of the court's review, the ALJ determined that Goode had the residual functional capacity ("RFC") "to perform light work . . . except he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; and he cannot climb ladders, ropes or scaffolds." (AR 15.) While finding that the claimant's medically determinable impairments could cause the alleged symptoms, the ALJ concluded that claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible. (AR 16.) The ALJ supported this determination of Goode's credibility by finding the following facts:

> The claimant alleges that he still has pain despite having physical therapy, a TENS unit, and using pain medications. He is now only taking Advil for his impairments, and he currently receives very little treatment. In addition, despite allegations of serious health problems and against the advice of doctors, the claimant continued to smoke heavily. Mr. Goode was also inconsistent in his testimony at the hearing. At first, he said that he does not see anyone during the day, but then later in the hearing he noted that several relatives including his son and brother came over regularly to visit him and help him with household chores and mowing. He also testified that he was seeking treatment for depression with mood swings and COPD during the hearing, but there is nothing prominent in the record indicating significant treatment for these impairments. The evidence in the record shows that the claimant has had chest x-rays and a mental health consultation, but no ongoing treat[ment] has been needed. Moreover, no treating or examining health practitioner has cited or suggested any medically determinable impairment or significant functional limitations linked to mental illness. Despite allegations of great functional loss, Mr. Goode reported that he helps care for his elderly mother, and that she also cares for him. He also does laundry, assists with cleaning the house, and does the dishes. Moreover, he has at times been quite active with this[.]

(AR 16) (internal citations omitted). The ALJ then provided a brief overview of Goode's medical history. (AR 17.) Finally, the ALJ gave "great weight" to the opinion of two State agency medical personnel, who opined that Goode could do light work and that his mental

4

impairment was not severe. (AR 17.) Ultimately the ALJ concluded that "the evidence contained in the record do not support the allegations of symptoms so severe as to preclude performance of any work since his alleged onset date." (AR 17.)

Based on his RFC finding, the ALJ then asked Deborah Bunn-Durham, a vocational expert, a series of hypothetical questions at step 5 involving a person with Goode's limitatiogreatns. Ms. Bunn-Durham testified that a person with those limitations could not perform any of Goode's past relevant work. (AR 18, 100.) At the same time, Ms. Bunn-Durham opined that a person with Goode's limitations *could* perform other jobs, citing as examples a ticket seller, cashier, and eyeglass frame polisher. (AR 18, 100-103.) Ms. Bunn-Durham stated that there were such jobs available in the national economy and in Wisconsin. (AR 18, 100-103.) Based on the lack of Goode's credibility and Ms. Bunn-Durham's opinion that suitable work existed in the national economy and in Wisconsin, the ALJ found that Goode was not disabled within the meaning of the Social Security Act. (AR 18-19.)

OPINION

The court must accept the ALJ's factual findings as "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Accordingly, credibility is typically the province of the ALJ. *Shramek v. Apfel,* 226 F.3d

809, 811 (7th Cir. 2000). Indeed, because an ALJ is in the best position to determine a witness's truthfulness, a court will not readily overturn an ALJ's credibility determination unless it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

An ALJ's credibility determination is "patently wrong" if it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p; *see also Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). While not abdicating the court's supervisory role, this means a credibility determination will be affirmed as long as the ALJ gives specific reasons that are supported by the record for his finding. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

On the other hand, a failure by the ALJ to explain adequately the basis for his credibility determination may be grounds for reversal. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012). Here, Goode argues that the ALJ failed to apply SSR 96-7p and incorrectly disregarded Goode's subjective complaints of pain. (Pl.'s Br. (dkt. # 11) 16-40.) After reviewing the record and the ALJ's opinion, the court is inclined to agree. At least in its current form, the ALJ's determination appears to rely mainly on evidence that does not undermine Goode's credibility, such as a history of smoking. *See Shramek*, 226 F.3d at 813. The ALJ also relies on other evidence regarding house-hold chores that was said to undermine

Goode's credibility, but failed to sufficiently develop this evidence in his decision, and during the hearing itself. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887.

I.  **Credibility Findings Based on Goode's Testimony**

The ALJ cited several pieces of evidence as undermining Goode's testimony regarding the limitations caused by his back injury. This evidence, however, either bears little weight in making a credibility determination or the ALJ failed to consider alternate explanations for the evidence.

The ALJ first noted that Goode continued to experience pain "despite having physical therapy, a TENS unit, and using pain medication." (AR 16.) This statement seems to imply that a patient receiving this treatment would not continue to experience pain, making Goode's statements to the contrary incredible, but the conclusion is problematic on a number of levels. As an initial matter, the notion that treatment *necessarily* would end (or even substantially alleviate) pain has no basis in law or fact. Nor does the ALJ articulate how this treatment undermined Goode's testimony regarding to his subjective pain or ability to work. As such, in contradiction to Seventh Circuit case law and the regulations, the ALJ's conclusion "lacks any explanation or support" without specific reasons as to why or how this evidence undermined Goode's testimony on his continuing pain. *See Elder*, 529 F.3d at 413-14; SSR 96-7p.

Next, the ALJ found that Goode was "only taking Advil for his impairments" and that he "receive[d] very little treatment"(AR 16), implying that Goode's testimony of debilitating pain lacked credibility if all he was taking were a mild pain medication. In fact, Goode testified that doctors tried to prescribe more powerful pain medication, but he refused due to

7

a history of substance abuse and addiction. (AR 85.) Absent testimony contradicting this claim, the ALJ had no basis to reject Goode's belief that the side effects of taking prescription pain medication would be "less tolerable than the symptoms." *See* SSR 96-7p; *Moss*, 555 F.3d at 562 (finding that the ALJ improperly placed significance on the claimant's decision to refuse prescription pain medications where the claimant "testified that she ha[d] been avoiding prescription pain medications because they cause side effects"). Moreover, the ALJ failed to address how he weighed Goode's decision to "only" take Advil in finding that Goode's testimony lacked credibility. *See Sims*, 442 F.3d at 538. Therefore, the court is left wondering whether the ALJ improperly inferred that Goode's testimony lacked credibility based on his decision to forego some medical treatment, while failing to consider proffered explanations for that decision. *See Moss*, 555 F.3d at 662; SSR 96-7p.

Finally, as noted, the fact that Goode continued to smoke heavily, despite his "allegations of serious health problems and against the advice of doctors," also troubled the ALJ. (AR 16.) A claimant's failure to quit smoking, however, is not evidence of failure to comply with treatment. *Shramek*, 226 F.3d at 813 ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health.") Rather than elaborating on the significance being placed on evidence of Goode's smoking, the ALJ simply noted this fact in determining that Goode's testimony lacked credibility. Once again, the court can only speculate as to how the ALJ used this evidence--which in any event should not be found significant--to determine that Goode's testimony lacked credibility. *See Elder*, 529 F.3d at 413-14.

II. **Inconsistencies Within Goode's Testimony**

In addition to drawing rather dubious conclusions from Goode's testimony, the ALJ

pointed to several perceived inconsistencies. The ALJ again, however, failed to explain how those inconsistencies undermined Goode's testimony about his ability to work. *See Zurawski*, 245 F.3d at 887 (concluding that the ALJ's failure to explain "inconsistencies" between the objective medical evidence and the claimant's daily activities impermissibly "left [the court] to ponder what exactly are these 'inconsistencies'"). Indeed, the ALJ's opinion once again fails to connect the evidence to the conclusions in a way that allows for review. *Id.*

For example, the ALJ found that Goode performed chores around his home, which purportedly undermined his testimony regarding his ability to perform work-related activities. Although SSR 96–7p directs the ALJ to consider a claimant's daily activities as part of the analysis, "[he] must do so with care." *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *see also Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (The ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week."). Minimal daily activities, such as doing laundry or preparing dinner, are "not of a sort that necessarily undermine[] or contradict[] a claim of disabling pain." *Zurawski*, 245 F.3d at 887 (citing *Clifford*, 227 F.3d at 872). The ALJ must explain why particular activities undercut the claimant's credibility. *See, e.g., Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence.")

Here, the ALJ failed to elaborate on the nature of, or frequency with which, Goode performs these activities. (*See* AR 16.) Indeed, the ALJ did not inquire into the frequency with which Goode performs these activities, much less how these household activities relate to essential work functions. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[T]he

9

ALJ mentions Stewart's ability to cook, clean, do laundry, and vacuum at her home, but those activities do not necessarily establish that a person is capable of engaging in substantial physical activity"). Goode's testimony that his elderly mother and he exchange caretaking roles falls far short of evidence suggesting he could take on sustained, regular work. Nor did the ALJ explain how Goode's minor and infrequent household chores "supports a conclusion that [he] was able to work a full-time job, week in and week out, given [his] limitations." *Jelinek*, 662 F.3d at 812. Without this elaboration, the court is left to wonder how Goode's household chores relate to his ability to work full-time. This unto itself warrants remand. *Id.*; *Jelinek*, 662 F.3d at 812.

## CONCLUSION

The ALJ's decision ultimately falls short because the ALJ did not provide specific reasons for finding that Goode lacked credibility, leaving a wholly unconstructed "accurate and logical bridge from the evidence to his conclusion." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). While the ALJ states facts from Goode's testimony, points to some medical history, and gives "great weight" to two reviewing state personnel, his opinion does not articulate how this evidence leads to the conclusion he arrives at. In remanding for this work to be done, the court is not suggesting that the ALJ *must* find Goode's testimony credible nor that Goode should ultimately prevail. What is apparent, however, is that the ALJ's decision, at least regarding Goode's credibility, was not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. Because Goode's credibility seemed to weigh heavily in the ALJ's RFC determination, remand is, therefore, necessary.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Richard A. Goode, Sr.'s application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 19th day of March, 2015.

BY THE COURT:

/s/

_____
William M. Conley
District Judge